[Civil No. 3269. Filed June 20, 1933.]

[22 Pac. (2d) 1089.]

NOLA HAMILTON, CLAY CREDILLE, TENNIE CREDILLE, BETTIE SCOTT, JENNIE LUCAS, BERTHA PERKINS, Trustees of Palm Chapter No. 3, Order of Eastern Star, a Secret Society, Appellants, v. NOBLE E. WHITE, M. A. WHITE, THOMAS YOUNG, LIZZIE WILLIAMS, FREDA FILER, MARY E. SCOTT, CLEMENZA SNOW, Appellees.

Mr. V. L. Hash, Mr. Herman Lewkowitz, Mr. Albert D. Leyhe and Mr. W. S. Norviel, for Appellants.

Mr. Robert L. Fortune, Mr. Hess Seaman and Mr. William G. Christy, for Appellees.

McALISTER, J. — Nola Hamilton and five other persons filed this action against Noble E. White and six others, all residents of Maricopa county, Arizona, praying that they be declared to be the trustees and officers of Palm Chapter No. 3, Order of Eastern Star, Grand Chapter of Arizona, and as such entitled to the possession of the charter and other paraphernalia of that organization. The court denied this relief but held the defendants to be the trustees and officers of the chapter and, therefore, the proper custodians of the charter and other lodge paraphernalia, and from this order the plaintiffs have appealed.

The complaint alleges in substance that the plaintiffs organized Palm Chapter No. 3, as a secret society, on January 1, 1929, and were on that day duly elected the officers and trustees of the order for a period of one year from that date; that at all times since they have been such trustees and officers, and as such entitled to the possession of the charter issued by the Grand Chapter of Arizona to said Palm Chapter No. 3, which has a value of approximately $2,000; that they had possession of it until the twelfth day of September, 1929, when it was taken from them without their consent by the defendants, who have since withheld it from them though they seized, re-

moved and are holding it pursuant to no statute or by-law of Palm Chapter No. 3; that the defendants are pretending to act as Palm Chapter No. 3, and unless restrained will continue to hold meetings in its name and incur debts which plaintiffs will be obligated to pay.

The relief sought is a decree directing the return of the charter or, in lieu thereof, the payment of the sum of $2,000, and enjoining the defendants from holding any further meetings or using the name of Palm Chapter No. 3, Order of Eastern Star, Grand Chapter of Arizona.

The defendants demurred to the complaint on several grounds and by way of answer denied, among other things, that plaintiffs are or have been since September 12, 1929, trustees and officers of said Palm Chapter No. 3, Order of Eastern Star, or that they as such are entitled to possession of the charter and other lodge paraphernalia. They deny also that the charter has been unlawfully detained by them or that they are merely pretending to act as such organization, but allege affirmatively that they, together with other individuals, organized Palm Chapter No. 3, Order of Eastern Star of Arizona, and have since been and now are members of the lodge and its duly elected officers and by virtue thereof entitled to and rightfully in possession of the charter and all lodge paraphernalia. They allege further that on September 12, 1929, plaintiffs withdrew from Palm Chapter No. 3, Order of Eastern Star, Arizona jurisdiction, for the purpose of joining the Texas division of that organization and actually made application therefor and when they did this, defendants aver in their cross-complaint, they took with them wrongfully the paraphernalia and equipment belonging to the defendants as trustees of the lodge and used for the work thereof together with the sum of $208.15 on deposit

in the Phoenix National Bank to the credit of said Palm Lodge No. 3.

By way of answer to the cross-complaint the plaintiffs deny that they withdrew from Palm Chapter No. 3 and took with them the charter and other lodge equipment, but allege that they organized said lodge by virtue of authority delegated to them by the Grand Lodge of Texas and that they hold the property belonging thereto as the trustees and officers thereof.

The record discloses that the plaintiffs took possession of the charter on June 11, 1920, under a claim and delivery bond and that it has since remained in their custody.

At the close of the trial, which lasted three days, the court made findings of fact and drew therefrom certain conclusions of law and, basing its action thereon, rendered judgment in favor of defendants. The substance of the findings, which are full and complete, is, so far as necessary for a proper disposition of the appeal, as follows:

(a) On the twelfth day of September, 1929, Palm Chapter No. 3 was a duly organized and existing chapter of the Sovereign Grand Chapter of the Order of Eastern Star for the State of Arizona, and on that day its officers, Noble E. White, worthy matron; Clay Credille, worthy patron; Tennie J. Credille, secretary; Bettie Scott, treasurer, and three other members, Teddy Lucas, Nola Hamilton and Clemenza Snow, without notice of the business to be conducted, met in a general meeting at the usual place in Phoenix and passed a resolution proposing the withdrawal of Palm Chapter No. 3 from the Sovereign Grand Chapter of the Order of Eastern Star for the State of Arizona and the affiliation of said chapter with the Sovereign Grand Chapter of the State of Texas. Two of these members, Noble E. White and Clemenza Snow, voted against this resolution and did not tender

their resignations and have since remained members of said Palm Chapter No. 3. Noble E. White, as worthy matron, and Lynn Ross Carter, Grand Matron of the Sovereign Grand Chapter of Arizona, have at all times since September 12, 1929, retained the warrant or charter of Palm Chapter No. 3.

(b) Following the meeting of September 12, 1929, Tennie J. Credille, purporting to act as secretary of Palm Chapter No. 3, actively promoted among the membership of the chapter an attempted affiliation with the Grand Chapter of Texas.

(c) On November 7, 1929, Mrs. Lynn Ross Carter, the Grand Matron of Arizona, under a prerogative to grant dispensations under the law of the organization together with five active members of Palm Chapter No. 3, the Grand Patron of the Grand Lodge, Robert L. Fortune, and six additional members of other subordinate lodges, held a meeting of Palm Chapter No. 3 for the purpose of obligating two new members and electing officers to serve the unfinished terms of those who withdrew from the lodge. At that meeting the Grand Matron, because of the withdrawal or purported withdrawal and the disloyalty and seditious conduct of said five members, declared the offices occupied by them prior to September 12, 1929, vacant and pursuant to her direction M. A. White and T. L. Young were obligated as members, whereupon officers of said Palm Chapter No. 3, to finish the unexpired terms of plaintiffs, were elected, the charter which had been in possession of the worthy matron, Noble E. White, since September 12, 1929, being present. On December 12th following, the date for the regular election of the officers of the lodge, there was held under the dispensation of the Grand Matron a meeting at which the defendants were elected and installed as the officers and trustees of the lodge.

(d) This litigation followed and in January, 1930, resulted in a judgment based upon findings of fact and conclusions of law, one of which was that Palm Chapter No. 3 withdrew from the Grand Chapter of Arizona at a regular meeting held on September 12, 1929. Plaintiffs acquiesced in this finding but defendants and cross-complainants appealed to this court and obtained a reversal of the judgment.

(e) Following the judgment of the trial court in January, 1930, enjoining the defendants from using the name, ''Palm Chapter No. 3,'' the Grand Matron in the exercise of her prerogative, under the laws of the order, granted the defendants on the 29th of February, 1930, a dispensation pending the appeal of the case to the Supreme Court to conduct meetings as an Eastern Star chapter under the name of Beautiful Star Chapter U. D., and on May 8, 1930, there was issued to them as Beautiful Star Chapter No. 3 a warrant to enable them to continue the practice of the lodge and receive its benefits without being in contempt of court. None of the defendants ever withdrew either as members or officers of Palm Chapter No. 3 but have at all times with the consent and assistance of the Grand Matron insisted upon their rights and continued this litigation to establish them. Following the remanding of the case for a new trial defendants held a meeting and took action to surrender the Beautiful Star Chapter No. 3 warrant and to resume their functions as members and officers of Palm Chapter No. 3, and on July 7, 1931, the Grand Matron and the Grand Patron of the Sovereign Grand Chapter of Arizona formally accepted the surrender of the warrant issued to Beautiful Star Chapter No. 3, acquiesced in and directed resumption by the defendants of the privileges and duties as members and officers of Palm Chapter No. 3, recognized defendants as the lawful members thereof and urged the continuance of this litigation to a final conclusion.

(f) Subsequent to September 12, 1929, no meetings were held by plaintiffs as Palm Chapter No. 3, Order of Eastern Star of Arizona, and plaintiffs have failed to perform any of the obligations of the chapter or members thereof.

(g) Under the laws of the order the Grand Matron and the Grand Patron had power to grant the dispensation they did grant.

(h) There was on deposit in the Phoenix National Bank on September 12, 1929, to the credit of Palm Chapter No. 3, the sum of $208.15 and between then and the date of the trial plaintiffs withdrew $162.50 of this, leaving a balance of $45.65, but $22 of the amount withdrawn was used for hall rent and inured to the benefit of Palm Chapter No. 3.

(i) The constitution and by-laws, the by-laws of Palm Chapter No. 3, the proceedings of the Grand Chapter, Order of Eastern Star of Arizona, McCoy's Ritual, and McKay's Masonic Jurisprudence constitute the law governing the grand and subordinate chapters of the Order of Eastern Star.

From the foregoing findings the court concluded as matters of law:

1. That the defendants and cross-complainants are the duly elected and qualified officers of Palm Chapter No. 3, Order of Eastern Star of Arizona, or, in any event, the *de facto* officers thereof, and that the effect of the resolution of September 12, 1929, attempting to withdraw Palm Chapter No. 3 as a chapter from the Grand Chapter of Arizona for the purpose of affiliating with the Grand Chapter of Texas amounted to a withdrawal of those who sponsored it from membership in Palm Chapter No. 3 of the Grand Chapter of Arizona.

2. That the several acts of the Grand Matron in calling the meetings of November 7th and December 12th, 1929, were within her power under the laws of the order, and the several acts consummated thereat

were within the scope and purpose of the laws of the organization.

3. That the issuance of the dispensation for Beautiful Star Chapter U. D. by the Grand Matron and of the warrant to such chapter to insure the membership of Palm Chapter No. 3 the advantages of such membership following the adverse decision of the superior court pending the hearing on appeal were within the scope and purview of the laws of the order and did not destroy Palm Chapter No. 3, nor identify its members, except temporarily, with that organization.

4. That the Sovereign Grand Chapter has under its constitution the right to waive any irregularities, and during the vacation of the Sovereign Grand Chapter the Grand Matron has the power to give such instruction and direction as the good of the order may require, her action therein not being reviewable in this proceeding by the plaintiffs.

5. That the defendants are entitled to immediate possession of the charter and other lodge paraphernalia of Palm Chapter No. 3, to the control of the $45.65 standing to the credit of Palm Chapter No. 3 in the Phoenix National Bank, to judgment against plaintiffs for $140.50, and to an order restraining them from asserting any right to the paraphernalia, money or property of Palm Chapter No. 3.

Pursuant to the foregoing the court rendered a decree directing plaintiffs to deliver to defendants the paraphernalia belonging to Palm Chapter No. 3 and restraining them from asserting any right, title or interest thereto, or any claim that they are the officers thereof; that defendants are entitled to check against or withdraw the $45.65 to the credit of Palm Chapter No. 3 in the Phoenix National Bank, and to judgment against the plaintiffs, Nola Hamilton, Clay Credille, Tennie Credille, Bettie Scott, Jennie Lucas and Bertha Perkins for $140 with interest.

Following the rendition of the decree the plaintiffs brought the case here for review but they have failed to include among the papers the evidence taken at the trial, though there is filed as a part of the record and, in lieu of the transcript of the reporter's notes, what purports to be a statement of facts. It was not, however, authenticated or certified as correct by the trial judge and, consequently, cannot be considered. Section 3871, Rev. Code 1928. We have, therefore, the same as in the former appeal, only the pleadings, the findings and the judgment by which to determine whether the assignments are well founded. *White et al.* v. *Hamilton et al.,* 38 Ariz. 256, 299 Pac. 124.

Appellants make some seventeen assignments but appellees contend that they are too general to constitute assignments in that they do not comply with the rule providing that assignments must distinctly specify the ground of error relied on. Passing over this contention, however, and examining them we are faced in the very beginning with the fact that they attack the findings, at least the first ten of them do, and since we have before us none of the evidence upon which the court acted in making the findings we are in no position to determine whether they rest upon a sound basis. Findings will not be set aside because unsupported by the evidence unless this court is furnished in authenticated form all the evidence that was considered by the trial court, and in the absence of any substantial portion of it even the presumption that the evidence introduced sufficiently supports the findings will prevail. *Ensign* v. *Koyk,* 31 Ariz. 1, 250 Pac. 246; *Wooster* v. *Scorse,* 16 Ariz. 11, 140 Pac. 819: It was held in *Arizona Realtors, Inc.,* v. *Lester,* 26 Ariz. 578, 229 Pac. 90, that where the abstract contains no testimony and there is filed no statement of facts, bill of exceptions or transcript of the reporter's notes the judgment will be affirmed,

since there is no way to determine whether the trial court's holding is supported by the evidence.

The other seven assignments attack the conclusions of law but these are necessarily drawn from the facts found and a reading of them discloses that they are reasonably deducible therefrom. The passage of the resolution of September 12, 1929, withdrawing Palm Chapter No. 3 from the Grand Chapter of Arizona for the purpose of affiliating it with the Grand Chapter of Texas is the basic fact or transaction out of which this lawsuit has grown, and it occurs to us that if the conclusion of law drawn from this occurrence, namely, that voting for and sponsoring this resolution was in effect a withdrawal by those who did it from membership in Palm Chapter No 3 of the Grand Chapter of Arizona, is correct, the other conclusions follow naturally. To the defendants and all the members of Palm Chapter No. 3 who desired to continue this chapter as an affiliate of the Sovereign Grand Chapter of Arizona it was such disloyal and seditious conduct as to justify them in so treating it, and under the rule ordinarily applicable to organizations of the character of the Order of Eastern Star this view would seem to be correct. For instance, the substance of the holding in *Gorman* v. *O'Connor,* 155 Pa. 239, 26 Atl. 379, as it appears in the syllabus, is:

"Where a local division of a benevolent society, by virtue of its constitution and by-laws, is a member of a national organization, a majority present at a meeting of the local division has no power, against the will of the minority present, to renounce allegiance to the national body, and at the same time carry with it the property of the local division, since the secession of the majority deprives it of all property rights in the organization.

"The fact that the subsequent proceedings of the minority in continuing the organization may have been irregular, and in violation of the constitution of the national body, does not give the majority, who

had seceded, any rights in the property of the local division.''

In *McFadden* v. *Murphy,* 149 Mass. 341, 21 N. E. 868, a case in which a majority of the members of a voluntary secret organization withdrew from it and united with a new order while those who remained, though a minority, reorganized it, elected officers in lieu of those who had seceded and retained its relations with the national organization, the court, as it appears in part in the syllabus, held:

''As it was apparent the seceders no longer intended to act as officers, vacancies existed, and the remaining members had the power to fill them by elections, and the division was not dissolved.

''The defendants, though a majority of the members of the old division, had no power to carry it over to the new national organization, as to do so would defeat the purposes for which it was created.''

The decree rendered by the court was called for by the findings and the conclusions of law and is, therefore, affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.