288 N.J. Super. 275 (1996)
672 A.2d 239
CHARLES GRIMES, APPELLANT,
v.
CITY OF EAST ORANGE, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 17, 1996.
Decided March 14, 1996.
*277 Before Judges PRESSLER, KEEFE and WEFING.
Eldridge Hawkins, attorney for appellant (Joseph F. Surdy, on the brief).
Ruderman & Glickman, attorneys for respondent, City of East Orange (Steven S. Glickman, of counsel and on the brief).
Deborah T. Poritz, Attorney General of New Jersey, attorney for respondent Merit System Board (Mary C. Jacobson, Assistant Attorney General, of counsel; June K. Forrest, Senior Deputy Attorney General, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff Charles Grimes (Grimes) appeals from a final decision of the Merit System Board (Board) in which the Board determined that the City of East Orange (City) validly appointed Harry Harman to the position of Police Chief. On appeal, Grimes contends, among other things, that the Board erred in deciding that the invalid appointment of Harman constituted no more than harmless error, and that the proceedings before the Board were *278 procedurally defective. We agree in part with Grimes' contentions and remand for further proceedings.
The City is organized pursuant to N.J.S.A. 40:103-5(71) to (127). Consequently, the Mayor, subject to confirmation by the City Council, is the appointing authority for the position of Chief of Police. N.J.S.A. 40:103-5(89). However, appointment and removal authority for all other members of the police department is vested in the Board of Police Commissioners (Commissioners). N.J.S.A. 40:103-5(98).
In December 1992, the Department of Personnel (DOP) erroneously issued a certification to the Commissioners, at the Commissioners' request, for the appointment of a Chief of Police. The Commissioners acted on the certification by appointing Harry Harman as Chief of Police on April 6, 1993. The validity of that appointment was one of the issues presented in a civil suit instituted by Grimes against the City and others in the Law Division.[1] That issue was subsequently severed from the Law Division proceeding for resolution through the administrative proceeding now under review.
On December 21, 1993, the Deputy Director of DOP issued an opinion holding that the certification issued by DOP for the appointment was "properly disposed of and recorded." She found that "[t]he Board [of Commissioners], with the concurrence of the Mayor, did adopt and approve the resolution offered by Commissioner Kimberly Moss to appoint Harry Harman as Police Chief of East Orange." Grimes appealed the Deputy Director's decision to the Board.
In its final determination of June 17, 1994, upholding the Deputy Director's decision, the Board said:
While appellant is correct that the Mayor is the appointing authority for the Police Chief, the Board of Police Commissioners indicated that the Mayor did concur with the appointment of Mr. Harman as Police Chief. Therefore, while the certification should have been issued to the Mayor, this technicality does not void the appointment *279 since the Mayor concurred with the appointment. Appellant has failed to submit any documentation which establishes that the Mayor did not concur with the appointment.
On appeal, the Board acknowledges, as it did in its opinion, that the Commissioners did not have the power to appoint Harman as Chief of Police. However, it argues that the Board's action in approving the appointment was "harmless error" because "the Mayor effectively ratified the procedural defect of Harman's initial selection by the wrong entity."
The City admits in its brief that if it had not sought "the consent and concurrence of the Mayor" the "`technical error'" occasioned by the Commissioners' action in appointing Harman "might possibly rise to the level of a more `substantive error,' requiring the vacation of Harry Harman's appointment[.]" However, the City contends that inasmuch as the Board found that the Mayor did "concur" in the appointment of Harman, Grimes is bound by that finding of fact. In essence, the City joins in the Board's argument that the Commissioners' error was cured by the Mayor's concurrence.
In this case, the Board's opinion does not speak in terms of ratification, although that is its clear import. The question of whether the invalid act of the Commissioners in appointing Harman was capable of subsequent ratification by action of the proper appointing authority is one of law. Therefore the Board's decision on that question is not entitled to deference. Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973).
The ability to ratify depends upon whether the act in question was ultra vires, as distinguished from intra vires. Bauer v. City of Newark, 7 N.J. 426, 434, 81 A.2d 727 (1951). Acts that are ultra vires are void and may not be ratified, while intra vires acts may be. Id. An act is ultra vires if the "municipality [was] utterly without capacity" to perform the act. Ibid. (emphasis added). On the other hand, an intra vires act is one that is merely "voidable for want of authority." Ibid. Thus, where, for *280 example, a contract is entered into by "an unauthorized agency" but the municipality has the power to enter into such contracts, the contract may be later ratified by the municipal body having the power in the first instance to make the contract. De Muro v. Martini, 1 N.J. 516, 522, 64 A.2d 351 (1949). The principle is equally applicable to appointments of employees. See Cetrulo v. Byrne, 31 N.J. 320, 330, 157 A.2d 297 (1960) (suggesting that the prosecutor had the power to ratify the appointment of plaintiff to the position of legal assistant to the prosecutor where the appointment had been improperly made by the Board of Freeholders). This is the general rule recognized throughout the country. See McQuillin, Municipal Corporations, § 12.175.10 at 19 (3rd ed. 1991) (the proper appointing authority may ratify and adopt an unauthorized appointment to an office or place in public employment).
Applying the forgoing principles to this case, we are satisfied that Harman's invalid appointment to the position of Chief of Police by the Commissioners was capable of ratification. This is so because, although the Commissioners were unauthorized to make the appointment, it was within the power of the municipality to do so through the act of the Mayor with confirmation by the Council. As such, Harman's appointment was simply voidable unless ratified. Bauer, supra, 7 N.J. at 434, 81 A.2d 727.
However, "ratification must be made with the same formalities required for the original exercise of power." McQuillin, supra, § 13.47 at 879; see also Edgewater Park v. Edgewater Park Housing Auth., 187 N.J. Super. 588, 602, 455 A.2d 575 (Law Div. 1982) (stating that ratification proceedings must occur in accordance with the law permitting the original act); Houman v. Mayor of Pompton Lakes, 155 N.J. Super. 129, 159, 382 A.2d 413 (Law Div. 1977) (citing McQuillin, supra, and holding that ratification must occur in accord with the statutory procedure set forth for cure).
*281 In the context of this case, Grimes proved that Harman's appointment was beyond the power of the Commissioners. It was the City's burden to show that the voidable act of the Commissioners was saved by ratification. That is to say, the City was required to show that Mayor Cooper was aware that he had the power to appoint in the first instance; that he was aware that the Commissioners' appointment was improper; and that, in ratifying the Commissioners' conduct, he was exercising his power to appoint as if he had done so in the first instance. Further, it must be shown that the Mayor's act of ratification was confirmed by the Council.
The attorney for the City simply represented to the Deputy Director that the Mayor was consulted by the Commissioners as a "courtesy" and that he "agreed" and "concurred" in the Commissioners' decision. Even if we were to assume that the attorney's representation was evidence upon which the Board could act, the content of the representation was incompetent to prove ratification. The Mayor's concurrence in the Commissioners' appointment was simultaneous with the Commissioners' invalid act. Ratification, as noted above, must take place after the invalid appointment and with knowledge of it. It is one thing to say that the Mayor concurred in an appointment that he thought he had no power to make. It is quite another thing to say that the Mayor, with knowledge that the Commissioners improperly exercised their power, nonetheless exercised his power of appointment and ratified the Commissioners' act. It is the latter conduct that is required to establish ratification, not the former. That is so because ratification is "equivalent to an original grant of power, ... and relates back to the date of the original action[.]" Houman, supra, 155 N.J. Super. at 159, 382 A.2d 413.
Thus, the Board's determination that the Commissioners' invalid conduct was a mere technicality that was cured by the Mayor's concurrence was neither supported by the record nor relevant case law. However, all other issues raised by Grimes on appeal *282 are without merit and do not require detailed discussion. R. 2:11-3(e)(1)(E).
The judgment of the Board is reversed and the matter remanded to allow the parties to offer relevant proofs on the issue of ratification in accord with this opinion. Jurisdiction is not retained.
NOTES
[1] Grimes v. City of East Orange, 285 N.J. Super. 154, 666 A.2d 613 (1995).