**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4709-16T4

BLUE WATER TOWNHOME
ASSOCIATION, INC.,

      Plaintiff-Respondent,

v.

LORI DIFABIO,

      Defendant-Appellant.

_____

        Argued September 20, 2018 – Decided March 8, 2019

        Before Judges Fuentes and Vernoia.

        On appeal from Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0120-15.

        James P. Grimley argued the cause for appellant (Grimley Law, attorneys; Adrienne Chapman and Norman W. Briggs, on the briefs).

        James F. Crawford and Christian M. Scheuerman argued the cause for respondent (James F. Crawford and Marks, O'Neill, O'Brien, Doherty & Kelly, PC, attorneys; Christian M. Scheuerman, James F. Crawford, and Sean X. Kelly, on the brief).

PER CURIAM

Defendant Lori DiFabio owns two condominium units in Townhomes at Blue Water, a Condominium, which is managed and operated by plaintiff Blue Water Townhome Association, Inc. She appeals from an order granting summary judgment in plaintiff's favor and awarding $377,815.09 in damages for past due condominium assessments, monthly fees and other costs and attorney's fees. Defendant also appeals from the court's order granting summary judgment dismissing her counterclaim, which challenged the validity of a $60,000 per unit special assessment that comprised $120,000 of the damages awarded. Based on our review of the record in light of the applicable law, we affirm the court's award of $85,949.09 in overdue condominium assessments, monthly dues and collection costs, reverse the award of $120,000 for the $60,000 per unit assessment and the dismissal of defendant's counterclaim, vacate the attorney's fee award and remand for further proceedings.

I.

In our review of the record before the trial court, we view the facts and all reasonable inferences therefrom in the light most favorable to defendant because she is the party against whom summary judgment was entered. Brill v. Guardian

2

Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  Applying that standard, the record before the trial court established the following facts.

Defendant owns two condominium units in Townhomes at Blue Water, a Condominium.  Defendant is admittedly delinquent in the payment of fees and assessments and other costs due to plaintiff.  In November 2013, plaintiff obtained a $38,454.12 default judgment against defendant in a separate proceeding for delinquent fees and assessments.  After defendant failed to satisfy the judgment, the court in that matter appointed a receiver for one of defendant's units to oversee the repair and rental of the unit.  By July 14, 2014, defendant owed plaintiff $51,843.41, in overdue fees and assessments.  This amount included the sums due under the November 2013 judgment.

The July 18, 2014 Meeting and Approval of the $60,000 Per Unit Special Assessment

At a July 18, 2014 meeting, plaintiff's board of trustees voted to authorize a $60,000 per unit special assessment for siding and deck replacements.  The board adopted a resolution explaining that the unit owners who were eligible to vote authorized the board "to create an assessment of $60,000 per unit, payable by [October 20, 2014] . . . to fund the project involving the decking and siding."

All of the unit owners, except defendant, subsequently paid the special assessment.

After obtaining bids from various contractors, in October 2014 plaintiff's board retained a contractor to complete the decking and siding project. The retention was not authorized by a vote of the unit owners at a formal board meeting. The contractor that was retained is owned by the board president, but he did not participate in the review of the bids received for the project or the board's decision to retain his firm.

Plaintiff's Complaint and Damages Claims

In March 2015, plaintiff filed a complaint alleging defendant failed to pay "all regular common maintenance expenses (monthly condo fees)[,] special assessments and attorney's fees and costs incurred in the collection of any unpaid monthly condo fees and special assessments." More particularly, in the first count of the complaint, plaintiff claimed $167,669.63 in damages, which included $28,287.85 in monthly condominium fees for December 2013 through March 1, 2015,[1] $120,000 for the $60,000 per unit special assessment for the siding and deck renovations and $19,381.78 in attorney's fees and costs incurred

---

[1] This amount included a $5500 per unit special assessment allegedly due on January 12, 2014.

A-4709-16T4

through March 5, 2015, for collection of the November 2013 judgment. Plaintiff also generally alleged it was entitled to any other amounts that became due during the litigation and additional attorney's fees incurred during its efforts to collect the sums due.

In the complaint's second count, plaintiff repeated its claim for damages for the attorney's fees and costs of collection of the sums due under the November 2013 judgment. Plaintiff subsequently filed an amended complaint, adding a claim in the second count for costs and fees associated with services provided by the receiver.

Defendant's Answer and Counterclaim

In response to the amended complaint, defendant filed an answer and counterclaim in which she sought a declaratory judgment that the special assessment and retention of the contractor were void because they were not authorized by plaintiff's board in accordance with the master deed and by-laws. Defendant also asserted claims for breach of fiduciary duty and a violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -210,[2] and sought specific performance of plaintiff's alleged obligation to provide plaintiff with records.

---

[2] The parties dismissed defendant's CFA claim by stipulation.

Plaintiff's Motions For Summary Judgment

Plaintiff was represented by separate counsel on its claims in the complaint and in defense of the counterclaim. In January 2017, plaintiff's counsel on the counterclaim moved for summary judgment for dismissal of the counterclaim. Plaintiff's counsel on the complaint then "cross-moved" for summary judgment on plaintiff's affirmative claims. The court considered the motions at the same time.

In support of its summary judgment motion to dismiss the counterclaim, plaintiff asserted that the board properly authorized the $60,000 per unit special assessment at its July 18, 2014 board meeting. Defendant and the other unit owners were properly notified of the meeting by a written notice that was sent on June 27, 2014. Any alleged failure to provide defendant with notice was immaterial because she was ineligible to vote due to her delinquency in the payment of condominium dues and assessments. According plaintiff, the board solicited bids for the siding and deck replacement project, selected the board president's company to perform the work without his participation or involvement and hired the company in October 2014, to perform the work at a cost of $60,000 per unit.

6

Plaintiff's "cross-motion" for summary judgment relied on the facts asserted in support of its initial motion and sought judgment against defendant for the sums allegedly due and owing for monthly fees, assessments, other costs and attorney's fees and costs. Plaintiff sought damages, inclusive of attorney's fees and costs, totaling $340,313.52. The total consisted of $168,447.52 for alleged past due monthly fees and assessments,[3] including $120,000 for the $60,000 per unit assessment for the siding and deck replacements. The remaining, and larger, amount sought, $171,866, was claimed for attorney's fees and costs.

While the summary judgment motions were pending, plaintiff's counsel on the complaint submitted a January 12, 2017 supplemental affidavit updating plaintiff's itemized statement of damages and claim for attorney's fees that reflected a revised total of $377,815.09. Plaintiff sought $205,949.09 in damages for fees, assessments, and costs, including costs related to the receiver

---

[3] The summary included credits against the sums due based on rents collected by the receiver.

and repairs made to defendant's units,[4] as well as $171,866 for attorney's fees incurred through December 8, 2016.[5]

Defendant's Opposition to the Summary Judgment Motions

Defendant's opposition to plaintiff's summary judgment motions focused on the imposition of the $60,000 per unit special assessment she alleged in her counterclaim was not approved in accordance with plaintiff's master deed and by-laws. She also challenged the reasonableness of plaintiff's attorney's fee request. She did not otherwise dispute plaintiff's entitlement to the remaining $85,949.09 for outstanding monthly fees, assessments and costs, including those associated with the receiver.

Defendant further argued plaintiff failed to formally authorize the October 2014 retention of the contractor to perform the siding and deck replacements,

---

[4] The record does not permit a precise breakdown of the revised and increased damages claimed in plaintiff's counsel's supplemental affidavit. The affidavit indicates that a summary of the damages is annexed as Exhibit K, but the exhibit included in the appendix does not include a breakdown.

[5] In a February 8, 2017 letter to the court, plaintiff's counsel further revised the amount of the requested damages to $389,084.06. Plaintiff claimed damages for fees, assessments and costs totaling $206,103.47, and its request for attorney's fees increased to $182,980.59. It is unnecessary to address the merits of the damages and attorney's fees requested in the letter, which was unsupported by an affidavit or certification in accordance with Rule 1:6-6, because the court's summary judgment orders were not based on it.

A-4709-16T4

and plaintiff's retention of the contractor was void because the contractor is owned by plaintiff's board president. In her sur-reply brief submitted in opposition to plaintiff's summary judgment motions, defendant argued for the first time that plaintiff lacked the authority to file its complaint because its board did not authorize the lawsuit at a board meeting.

Plaintiff's Counsel's Letter Submission Concerning Ratification

While the summary judgment motions were pending, plaintiff's counsel submitted a February 13, 2017 letter to the court, with accompanying attachments, stating that the association conducted a special meeting on February 12, 2016, and a "ballot by mail" in accordance with its "[m]aster [d]eed and [b]y-[l]aws" ratifying the July 18, 2014 vote to approve the $60,000 per unit special assessment and the October 2014 retention of the contractor to perform the siding and deck replacements.[6] Plaintiff's counsel further stated that he provided defendant notice of the special meeting and ballot-by-mail by faxing a notice to her counsel nine days prior to the scheduled meeting date. Plaintiff's counsel attached documents to his letter including the notice of the meeting, a

---

[6] The letter further advised that the ballot-by-mail ratified an October 25, 2015 approval of an additional $20,000 per unit special assessment. Defendant does not challenge the board's approval of that assessment.

ballot and a resolution memorializing the ratification vote. Although plaintiff's counsel's rendition of the facts related to the ratification was unsupported by any affidavit or certification, see R. 1:6-6, he requested that the court consider the letter and documents, and asserted that because the $60,000 special assessment and retention of the contractor were ratified, "there is no reason why [s]ummary [j]udgment should not be entered in favor of . . . plaintiff and against defendant."

The Trial Court's Decision

After hearing argument on the summary judgment motions, the court issued a written decision finding defendant was "entitled to notice [of] the July 18, 2014 meeting" pursuant to Section 3.04 of plaintiff's by-laws regardless of whether she had fees and assessment arrearages at the time. In pertinent part, Section 3.04 provides that notice of plaintiff's meetings shall be given to unit owners "not less than ten (10) days nor more than ninety (90) days before the day on which the meeting is to be held."

The court also determined there was a genuine issue of material fact as to whether defendant received notice of the July 18, 2014 meeting but that the dispute over defendant's receipt of the notice was not material. The court reasoned that defendant was not prejudiced by any alleged failure to provide notice of the meeting because she was ineligible to vote under plaintiff's by-laws

10

due to her delinquency in the payment of fees and assessments, and she made no showing that had she been given notice of the meeting, she had the ability to timely pay the amount due and restore her voting eligibility prior to the meeting.[7]

The court also determined that plaintiff's master deed authorized the July 18, 2014 $60,000 per unit special assessment and the subsequent retention of the contractor to perform the siding and deck replacements.[8] The court concluded that although plaintiff did not approve the retention of the siding and deck replacement contractor at a formal meeting prior to the contractor's commencement of the work, the decision to retain the contractor was not ultra vires because the master deed granted plaintiff "the capacity to award the construction contract . . . as a special assessment."

The court further determined that any alleged failures to comply with the master deed and by-laws in plaintiff's adoption of the $60,000 special

---

[7] Section 2.09 of the association's by-laws provides that a unit owner shall be entitled to vote at the association's meetings "if [s]he has fully paid all installments due for assessments made or levied against [her] and [her] Unit . . . together with all interest, costs, attorney's fees penalties and other expenses . . . at least three (3) days prior to the date fixed for such meeting."

[8] The court relied on Section 6.10 of the master deed that in pertinent part authorizes the association board to levy "a [s]pecial [c]ommon [e]xpense [a]ssessment" for "the cost of any reconstruction, repair or replacement of an existing [c]ommon [e]lement not determined . . . to constitute an emergency."

11

assessment and hiring of the contractor were cured during the February 2016 board meeting and ballot-by-mail ratification vote. The court rejected defendant's contention that the ratification was void because she received notice of the February 12, 2016 meeting and the ballot-by-mail nine days earlier, instead of the ten days required under plaintiff's by-laws. The court found the one-day difference was "de minimis and . . . [did] not materially prejudice [d]efendant," and the February 12, 2016 ratification vote was "effective for purposes of [the association's] claims."

The court also rejected defendant's assertion that plaintiff's retention of the contractor was void because the contractor is owned by plaintiff's board president. The board president was not involved in the consideration of the bids for the work or plaintiff's decision to hire his company. The court determined there was no evidence plaintiff's retention of the company constituted "self-dealing" or an "unconscionable" violation of its fiduciary duty to defendant and the decision was protected by the business judgment rule, which protects a corporation's internal decisions absent a "showing of fraud or lack of good faith."

The court awarded attorney's fees to plaintiff, finding the master deed explicitly provides for plaintiff's recovery of attorney's fees incurred to collect

12

unpaid assessments, and "[d]efendant may not defeat summary judgment on this issue by conclusory allegations." The court explained that it reviewed the invoices supporting plaintiff's fee request and found "that the attorney's fees [were] reasonable in relation to the time spent and efforts made in pursuing the claim as well as the other cited fees, including receivership fees." The court observed that defendant failed to "set forth any facts that would put into question the reasonableness of the attorney's fees sought by" plaintiff.

The court entered an order granting plaintiff's motions for summary judgment, dismissing the counterclaim and entering judgment in the amount of $377,815.09 plus costs in plaintiff's favor.[9] This appeal followed.

## II.

We apply the same standard as the trial court in our review of appeals from summary judgment determinations. Lee v. Brown, 232 N.J. 114, 126 (2018). "Summary judgment is appropriate 'when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law.'" Ibid. (quoting Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016)).

---

[9] Annexed to the court's written opinion is a May 25, 2017 order. The court issued a revised order on June 6, 2017. The record does not reflect the reason for entry of the revised order. In any event, the revised order does not include any substantive changes to the initial order.

We conduct a de novo review of the court's determination of legal issues, Ross v. Lowitz, 222 N.J. 494, 504 (2015), and its application of the law to the undisputed facts, Lee, 232 N.J. at 127.

Under Rule 4:46-2(c), summary judgment is granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." See also Burnett v. Gloucester Cty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009). In applying the standard to our review of a summary judgment determination, we "must view the facts in the light most favorable to the non-moving party." Bauer v. Nesbitt, 198 N.J. 601, 604-05 n.1 (2009); see also R. 4:46-2(c); Brill, 142 N.J. at 540. Moreover, "[a]n issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c); Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (quoting R. 4:46-2(c)).

We begin our analysis by observing that defendant's arguments are limited. Defendant first contends the court erred by finding plaintiff properly

approved the $60,000 per unit special assessment and the hiring of the contractor, and in its determination of the attorney's fees due to plaintiff. She does not contest the court's determination that plaintiff is otherwise entitled to summary judgment on its claims for other outstanding amounts due for unpaid dues, fees and assessments. That amount totals $85,949.09.[10] We limit our discussion to the issues raised directly in defendant's brief. An issue not briefed on appeal is deemed waived. Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008); Zavodnick v. Leven, 340 N.J. Super. 94, 103 (App. Div. 2001).

A condominium association's "operations are governed not only by the Condominium Act, but also through the contents of the master deed and the condominium by-laws." Jennings v. Borough of Highlands, 418 N.J. Super. 405, 420 (App. Div. 2011). Plaintiff exercises its authority "[s]ubject to the provisions of the master deed, the by[-]laws, rules and regulations and the

---

[10]  As noted, in support of its motion for summary judgment, plaintiff claimed $205,949.09 in damages for fees, assessments and costs, excluding attorney's fees. On appeal, defendant challenges only the court's determination plaintiff is entitled to $120,000 in damages based on the $60,000 per unit special assessment. Thus, defendant does not challenge the court's award of $85,949.09 to plaintiff.

provisions of [the Condominium Act, N.J.S.A. 46:8B-1 to -38] or other applicable law," N.J.S.A. 46:8B-15, and defendant does not dispute that the $60,000 per unit assessment constituted a special assessment[11] which required approval at a meeting of plaintiff's board held in accordance with the master deed and by-laws. We therefore first address the requirements of the master deed and by-laws for approval of special assessments.

Section 6.10 of the master deed imposes specific and express requirements for board approval of special assessments. It provides that approval of special assessments must "receive the assent of two-thirds (2/3) in interest of the affected [m]embers in [g]ood [s]tanding." In addition, the vote on a special assessment "shall be taken at a meeting duly called for [that] purpose." It also provides that notice of the meeting "shall be sent to all [u]nit [o]wners no less than thirty (30) days in advance."

The requirements of Section 6.10 of the master deed, at least as it concerns the requirements for board approval of the $60,000 per unit special assessment, were ignored by the motion court. Instead, the motion court relied on Section

_____

[11] The July 18, 2014 resolution described the $60,000 per unit assessment as a "special assessment" and the motion court determined the board was authorized to impose the assessment under Section 6.10 of the by-laws, which applies only to special assessments.

3.04 of the by-laws to define the requirements for the board's putative approval of the special assessment. In pertinent part, Section 3.04 of the by-laws provides that "[e]xcept as otherwise provided by law . . . notice of each meeting of the [u]nit [o]wners[12] . . . shall be given not less than ten (10) days nor more than ninety (90) days before the day on which the meeting is to be held."

Here, Section 6.10 of the master deed sets the benchmark against which the board's attempts to approve the $60,000 per unit special assessment must be measured. Plaintiff must act in accordance with its master deed and by-laws, N.J.S.A. 46:8B-15, and Section 6.10 expressly defines the requirements for plaintiff's adoption of a special assessment. Moreover, Section 6.10 is wholly consistent with Section 3.04 of the by-laws because Section 3.04 provides that notice of a meeting must be given on not less than ten days' nor more than ninety days' written notice, and thus makes provision for the thirty days' notice mandated by Section 6.10 for the approval of special assessments. In addition, even if there was a conflict between Section 3.04 of the by-laws and Section

---

[12] N.J.S.A. 46:8B-3(q) defines "unit owner" as "the person or persons owning a unit in fee simple." The statutory definition is incorporated by reference in Section 1.02 of plaintiff's by-laws. Defendant is a unit owner of two units in Townhomes at Blue Water, a Condominium.

17

6.10 of the master deed, Section 13.01 of the by-laws provides that "the requirements of [the] [m]aster [d]eed . . . shall be deemed controlling."

We agree with the motion court that the evidence presented by the parties revealed a fact issue as to whether plaintiff sent defendant notice of the July 18, 2014 meeting. We are not, however, persuaded by plaintiff's contention, and the court's finding, that a failure to provide defendant with notice of the July 2014 meeting is immaterial because defendant made no showing she had the ability to pay the amounts due prior to the meeting and thereby obtain reinstatement of her voting privileges.

As defendant correctly argued before the motion court, plaintiff did not present evidence showing it complied with the requirements of Section 6.10 of the master deed because, even accepting its assertions as true, notice was sent to the unit owners on June 27, 2014, less than the required thirty days prior to the July 18, 2014 meeting. In addition, although Section 2.09 of the by-laws provides that only unit owners who are current in their payment of all assessments, interest, costs and attorney's fees may participate in board votes, Section 6.10 of the master deed requires that notice of a meeting at which a special assessment may be approved shall be given to all "unit owners" regardless of whether they are current in their obligations to plaintiff or not. See

18

N.J.S.A. 45:22A-46(a) (2016)[13] (requiring "adequate notice" be sent to "all unit owners" of condominium association meetings at which binding votes will be taken and that "all unit owners" be permitted to attend such meetings); N.J.S.A. 46:8B-13(a) (providing, with certain specified exceptions, that condominium association board meetings "shall be open to attendance by all unit owners").

Defendant's status as an ineligible voter did not excuse plaintiff's failure to provide defendant with the required notice of the July 2014 meeting. Under plaintiff's master deed and by-laws, defendant was entitled to attend the meeting whether she was eligible to vote or not. Because the record is devoid of any evidence plaintiff provided timely notice under Section 6.10 of the master deed, and there is otherwise a genuine issue of fact as to whether late notice under Section 6.10 was sent at all, plaintiff was not entitled to summary judgment finding plaintiff properly approved the $60,000 per unit assessment at the July 2014 meeting.

In an effort to salvage its failure to comply with the requirements of its master deed and by-laws, plaintiff argues it ratified the July 2014 approval of the special assessment at a February 2016 meeting and ballot-by-mail vote. The

_____

[13] An amendment to N.J.S.A. 45:22A-46(a) replaced the reference to "unit owners" with "association members, and voting-eligible tenants where applicable." L. 2017, c. 106, § 7.

A-4709-16T4

argument, however, is supported only by plaintiff's counsel's February 13, 2017 letter to the court and the documents related to the ratification that were attached. Although we do not question the veracity of counsel's letter, it is inadequate to support a conclusion the special assessment was ratified. Conclusory assertions without support in an affidavit or certification based upon the personal knowledge of the affiant cannot support or defeat a motion for summary judgment. Ridge at Back Brook, LLC, v. Klenert, 437 N.J. Super. 90, 97-98 (App. Div. 2014); Brae Asset Fund, LP v. Newman, 327 N.J. Super. 129, 134 (App. Div. 1999); see also Celino v. Gen. Accident Ins., 211 N.J. Super. 538, 544 (App. Div. 1986) (explaining that facts relied on to support a summary judgment motion must "be submitted to the court by way of affidavit or testimony" and not by presentation of argument in a brief).

In any event, even if the facts concerning the ratification were properly supported by an affidavit, certification or other competent evidence, plaintiff is not entitled to judgment on its claim for the $60,000 per unit special assessment. To be sure, plaintiff is entitled to ratify the assessment because it had the legal authority to impose the assessment in the first instance. See Port Liberte II Condominium Ass'n v. New Liberty Residential Urban Renewal Co., 435 N.J. Super. 51, 65 (App. Div. 2014) (finding condominium association may ratify an

action it has the legal authority to perform). However, a ratification is valid only if it is "accomplished 'with the same formalities required for the original exercise of power.'" Id. at 66 (quoting Grimes v. City of East Orange, 288 N.J. Super. 275, 280 (App. Div. 1996)).

Based on the information contained in plaintiff's counsel's February 13, 2017 letter, plaintiff did not ratify the assessment in accordance with formalities required under Section 6.10 of the master deed. Notice of the meeting was sent only nine days prior to its scheduled date, and not the thirty days required under Section 6.10. In addition, Section 6.10 mandates that approvals of special assessments must take place at a board meeting, and plaintiff opted for a ballot-by-mail vote.[14] Thus, plaintiff failed to present evidence it complied with the requirements of Section 6.10 in obtaining its board's putative ratification of the invalid July 2014 approval of the $60,000 per unit special assessment. Lacking

---

[14] We reject the notion that Section 3.09 of the by-laws, which allows a ballot-by-mail "in lieu of calling a membership meeting," authorized the ballot-by-mail procedure used here. As noted, plaintiff was required to ratify the special assessment in accordance with the formalities required under Section 6.10 of the master deed. Again, Section 6.10 mandates that votes on special assessments shall take place at a duly noticed meeting, and the by-laws provide that if there is a conflict between the by-laws and the master deed, the master deed controls. As such, plaintiff cannot properly conduct a ballot-by-mail for approval of a special assessment under Section 6.10 of the master deed.

any evidence that plaintiff's attempted ratification complied with the dictates of the master deed for approval of a special assessment, we are constrained to conclude the ratification is null and void and does not revive the otherwise invalid July 2014 approval of the special assessment. See ibid. We therefore reverse the court's summary judgment order dismissing defendant's counterclaim challenging the $60,000 per unit special assessment and granting summary judgment, awarding plaintiff $120,000 in damages based on defendant's alleged failure to pay the assessment, and remand for further proceedings on those claims.

Defendant also argues the court erred by finding plaintiff properly ratified the October 1, 2014 retention of the contractor to perform the siding and deck replacements. The retention of a contractor, as opposed to the approval of the special assessment of the project, is not governed by Section 6.10 of the master deed, but it is subject to the requirements of the by-laws. We again note that the record presented does not allow a determination of the issue because the facts supporting the alleged ratification are not supported by competent evidence. We

22

therefore reverse the court's order dismissing defendant's counterclaim challenging plaintiff's retention of the contractor on that basis alone.[15]

We find no error in the court's determination, for which there was an adequate record based on competent evidence, that proper ratification of the retention of the contractor would be protected under the business judgment rule. Under the business judgment rule:

> when business judgments are made in good faith based on reasonable business knowledge, the decision makers are immune from liability from actions brought by others who have an interest in the business entity. The business judgment rule generally asks (1) whether the actions were authorized by statute or by charter, and if so, (2) whether the action is fraudulent, self-dealing or unconscionable.
>
> [Seidman v. Clifton Sav. Bank, 205 N.J. 150, 175 (2011) (quoting Green Party v. Hartz Mountain Indus., 164 N.J. 127, 147-48 (2000))].

---

[15] We observe, however, Section 3.09 of the by-laws generally allows for ballot-by-mail approval of questions by plaintiff's board and, unlike approvals for special assessments, there is nothing in the master deed or by-laws that prohibits its application to the unit members' approvals of the retention of contractors. We do not decide what impact plaintiff's failure to authorize and ratify the July 2014 approval for the siding and deck replacement project has on the validity of any ratification of its retention of the contractor to perform the work. The issue is not directly addressed by the parties and may be considered as necessary and appropriate by the remand court.

"[D]ecisions made by a condominium association board should be reviewed by a court using the . . . business judgment rule." Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 134 (App. Div. 2018) (quoting Walker v. Briarwood Condo Ass'n, 274 N.J. Super. 422, 426 (App. Div. 1994)).

Here, the record is bereft of any evidence showing on basis to conclude that retention of the contractor in October 2014 was founded on fraud or self-dealing or is otherwise unconscionable. If on remand competent evidence shows the ratification of the retention of the contractor occurred in accordance with the requirements of Section 3.09 of the by-laws, the February 2016 approval of the retention of the contractor is protected under the business judgment rule. See e.g., id. at 136 (finding plaintiff did not overcome the "rebuttable presumption" that the actions of a homeowner's association were valid under the business judgment rule where plaintiff did not carry the burden of showing the actions were "fraudulent, self-dealing, or unconscionable").

We next consider defendant's contention the court erred by granting plaintiff's request for $171,866 in attorney's fees. She does not dispute that the by-laws authorize plaintiff's recovery of attorney's fees for the costs of collecting overdue fees and assessments but argues, as she did before the motion court, that the fees claimed are unreasonable.

The reasonableness of a counsel fee application is governed by Rule of Professional Conduct 1:5(a) and Rule 4:42-9(b). City of Englewood v. Exxon Mobile Corp., 406 N.J. Super. 110, 124-25 (App. Div. 2009). R.P.C. 1:5(a)(1) to (7) identify seven factors a court is required to consider in assessing the reasonableness of attorney's fees. Id. at 125. Further, in its consideration of an award of fees, a "court must analyze [the seven] factors . . . and then must state its reasons on the record for awarding a particular fee." Ibid. (quoting Furst v. Einstein Moomjy, 182 N.J. 1, 22 (2004)). A court's statement of its reasons addressing each factor "is fundamental to the fairness of the proceedings and serves as a necessary predicate to meaningful review." Ibid. (quoting R.M. v. Supreme Court of N.J., 190 N.J. 1, 12 (2007)).

Here, the court generally found the claimed fees were reasonable but neither addressed each of the R.P.C. 1:5(a) factors nor made the requisite findings as to each supporting plaintiff's substantial fee award. For that reason alone, we vacate the attorney's fees award and remand for the court to consider and make detailed findings concerning the substantial fees claimed by plaintiff's counsel.

We note for example that the court did not consider the "amount involved" and recovered for plaintiff's damages as required that under R.P.C. 1:5(a)(4),

25

and did not assess the reasonableness of $171,866 in attorney's fees to collect $205,949.09 in purported damages. And now, when the invalid $120,000 invalid special assessment on defendant's two units is stripped from the court's damage award, the court must consider the reasonableness of $171,866 in attorney's fees where the "amount involved" is $85,949.09 in damages.

Moreover, in its determination of the reasonableness of the fees and the results obtained, the court shall also consider that despite the substantial attorney's fees charged for services related to the July 2014 meeting and subsequent February 2016 putative ratification, those attempts at approving the $60,000 special assessment are invalid. Thus, the ensuing collection efforts and litigation related to those meetings, putative approvals and the assessment itself are the result of plaintiff's ineptitude for which defendant is not obligated to pay plaintiff's attorney's fees. Of course, the court should consider any other facts and circumstances relevant to a determination of the reasonableness of the fees on remand.

Last, we do not address defendant's claim that plaintiff lacked authority to prosecute this matter because it was not authorized to do so by the board. The issue was first raised before the motion court in defendant's sur-reply brief in connection with plaintiff's summary judgment motions. We offer no opinion on

A-4709-16T4

the issue because the record is bereft of competent evidence permitting a resolution of the claim, which was not asserted in defendant's counterclaim. Defendant may make the argument before the motion court on remand.

Any arguments raised by defendant that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed as to the court's award of summary judgment on plaintiff's claim for $85,949.09 for overdue fees, assessments and costs. Reversed as to the court's award of summary judgment to plaintiff for $120,000 for the $60,000 per unit special assessment and dismissing defendant's counterclaim challenging the $60,000 per unit special assessment and the board's retention of the contractor. We vacate the award of $171,866 in attorney's fees to plaintiff. The matter is remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION